Case 4:06-cv-00219  Document 1-2  Filed in TXSD on 01/19/06  Page 1 of 48

12/02/2005  11:22   28148871      AJM FRAMERS, INC.        PAGE  03/48
From: Sandra  To: Alexander MacKinnon                 Date: 12/5/2005 Time: 2:33:08 PM      Page 2 of 49

NO. 2005-76832

| | | |
|---|---|---|
| TRUSSWAY, LTD. | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | |
| VS. | § | 270th JUDICIAL DISTRICT |
| | § | |
| AJM FRAMERS, INC. | § | |
| Defendant. | § | HARRIS COUNTY, TEXAS |

### PLAINTIFF'S ORIGINAL PETITION: APPLICATION FOR TEMPORARY RESTRAINING ORDER: AND APPLICATION FOR TEMPORARY INJUNCTION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, Trussway, Ltd., and brings this action against Defendant AJM Framers, Inc., and in support thereof respectfully shows the court as follows:

### PARTIES

1.     Plaintiff Trussway, Ltd. ("Trussway") is a Texas limited partnership, with its principal place of business in Houston, Texas.

2     Defendant, AJM Framers, Inc. ("AJM"), a Texas corporation whose registered office is 16850 Diana Lane Ste. 102, Houston, Texas 77058, Harris County, Texas, may be served with process by serving its president and registered agent for service of process, Alexander Joseph MacKinnon, at that address.

Plaintiff requests the issuance of a citation for service via any Sheriff, Constable or other authorized person.

1

**EXHIBIT**

tabbies®  |

## JURISDICTION & VENUE

3.      Jurisdiction is proper in Harris County, Texas because this Court has personal jurisdiction over the Defendant AJM since its principal place of business is within Harris County, Texas and the claims asserted are within the jurisdictional limits of this Court.

4.      Venue is proper in Harris County, Texas pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002.(a)(1) and (3), because all or a substantial part of the facts giving rise to the causes of action asserted in this case arose in Harris County, Texas, and it is the county of Defendant's principal office in this state.

## DISCOVERY LEVEL

5.      This is a level 2 discovery case, though Trussway respectfully requests expedited discovery as it relates to the injunctive relief issues.

## FACTS

6.      This is a case of MISAPPROPRIATION of Trussway's trade name, truss engineering software and other intellectual property. More important to the issue of injunctive relief, however, this is a case of MISUSE of such MISAPPROPRIATED intellectual property by AJM and others acting in concert with AJM.  In factual terms, AJM  convinced  several  departed  Trussway  employees  with  sales  and design/engineering  expertise,  who  unfortunately  retained  access  to  Trussway's computer programs and modeling data (including Trussway's highly exclusive license to use MiTek, Inc. truss design software), to engineer trusses and  design a truss placement  plan  with  such  pirated  intellectual  property,  even  leaving  the  name "TRUSSWAY" prominently displayed on the very truss placement plans that AJM is currently using to erect the Estates at Greenway Apartments Project ("the Greenway

2

Project")[1]  But, AJM was unable to secure fabrication of the trusses utilizing the proprietary MiTek connector plates called for by the MiTek truss design software, so AJM has allowed the fabrication of trusses and has installed such trusses on the Project with connector plates which do not conform to the MiTek software and are undisputedly inferior to MiTek connector plates called for by the software.[2]  AJM did this without telling Trussway (not surprising), but, upon information and belief, AJM also hid such substitutions from the engineer of record (SCA Consulting Engineers), from the owner of the Greenway Project, and from the relevant authorities at the City of Houston. Trussway seeks injunctive relief to prevent the further misappropriation of its intellectual property; but, more importantly, Trussway seeks injunctive relief with expedited discovery to obtain the relevant documents and to inspect the Project before the trusses are covered with sheetrock and exterior siding, etc., perhaps forever hiding the unauthorized substitution of truss plates not in conformance with the MiTek software -- albeit misappropriated MiTek software from Trussway.  This mis-match of engineering and fabrication, combined with the erection of the trusses with a truss placement plan with Trussway's name on it, could irreparably harm Trussway's reputation, and could lead to unknown liabilities in the event of structural failure.

7.  More specifically and by way of background, Trussway designs, engineers, fabricates and supplies wood floor and roof trusses to construction projects throughout most of the United States. Wood trusses, also known as simply trusses, are engineered structural components utilized in construction to cover longer spans with greater strength and other advantages over conventional, stick lumber.

[1] See Affidavit of Greg Frey, paragraphs 9 and 11, and Exhibit A-1 photograph of such Placement Plans
[2] See Affidavit of Kent J. Pagel, paragraphs 5 and 6.

3

8.    AJM is a framing contractor based in Houston, Texas and is currently framing the Greenway Project on behalf of the general contractor, Morgan Construction Company ("Morgan"). In the spring of 2005 Trussway received a request from Morgan to bid the design, engineering, fabrication and supply of trusses required for the Greenway Project.    Morgan requested that Trussway submit a bid directly to Morgan and send a copy to AJM.    Trussway submitted the bid and was initially given indications that Trussway was awarded the truss and component business for the Greenway Project.    Due to a dispute between AJM and Trussway over an unrelated project in California, the relationship between AJM and Trussway deteriorated.    Shortly thereafter, Trussway learned that AJM would not purchase the design, engineering, fabrication and supply of trusses for the Greenway Project from Trussway.

9.    At the time Trussway submitted its bid to Morgan for the Greenway Project, Trussway employed Chris Wiggs as a salesman, and Chih Wei Yin ("Yin") as a truss designer.    As a truss designer, Yin worked with and under other Trussway designers and engineers, utilizing Trussway's licensed copies of CAD software for preparing truss layout plans and a licensed copy of MiTek's truss design software for preparing engineered truss designs.    During the period August, September, and early October, 2005, Chris Wiggs and Chih Wei Yin voluntarily resigned from Trussway's employment.

10.    MiTek is one of the predominant truss plate manufacturers in the United States, and supplies patented metal connector plates.    Metal connector plates are a fundamental component of all trusses. The plates are pressed by manufacturers into joints where various wood components connect, and the teeth of the plates hold the wood in place and provide other values essential to the strength and safety of the

4

fabricated wood truss. Because of its desire to sell metal plates to the truss industry, MiTek also allows its authorized truss fabricators under a separate license to utilize the MiTek truss design software under the strict controls placed by MiTek. Also, over many years Trussway has developed certain parameters and assumptions, including safety factors, etc. which make its truss designs consistent and conforming to its quality standards.

11.    Also relevant to the issue of truss design, Trussway has acquired by license CAD software to enable Trussway's designers and engineers to design layouts of the trusses for each project (i.e. these are typically called the "truss layout" or "truss placement plans"), which is an essential part of the overall design/engineering of any particular project. Fabrication and supply of the trusses refers to the process of actually building the trusses in a truss plant through placing the wood components specified in the design in the designed pattern, and connecting the wood components via the connector plates of the type and size specified in the approved truss design drawings.

12.    Greg Frey ("Frey"), Trussway's Operations Manager for its Houston Division, often visits various construction sites to contact customers, potential customers, and to generally monitor construction activities in Houston. On November 14, 2005 Frey visited the Greenway Project and was shocked to see truss placement plans with Trussway's name on those plans, even though Frey knew that AJM had not contracted with Trussway to provide either truss design drawings, truss placement plans or the trusses themselves for the Greenway Project.

13.    Frey was unable to determine the manufacturer of the trusses being delivered to the Greenway Project, since the trusses were unmarked and were being

5

delivered on common carrier trucks. Frey knew that the truss plates being incorporated into the trusses were not MiTek plates however as they did not bear the distinctive MiTek mark contained on its plates.

14.    During a subsequent visit to the Greenway Project, Frey talked to AJM's employee, Romero, who confirmed that AJM was framing and erecting the Greenway Project based on a set of placement plans bearing Trussway's name. Romero also allowed Frey to take a photograph of such placement plans with Trussways' name, a copy of such photo being attached to the affidavit of Greg Frey as Exhibit A-1, attached hereto. Frey noticed that the truss placement plans with Trussway's name on such plans also had the initials "J.W." on them, as in "John Wiggs". John Wiggs was also a former salesman of Trussway and the father of Chris Wiggs. Frey believed that John Wiggs was not, himself, capable of operating the computerized software – even if he had a license, which he does not -- necessary to generate such placement plans, so Frey began to investigate further to identify the source of such misappropriated software and related intellectual property.

15.    Frey then contacted Yin, who Frey suspected may have assisted in the preparation of some of the truss design and engineering on the Greenway Project. Frey knew this in part because Frey had learned that Yin had retained a copy of the MiTek software and/or the CAD software on his laptop computer when he resigned from Trussway, so Trussway had recently recovered the laptop through demanding that Yin return it to Trussway. Upon calling Yin regarding this new matter Yin advised that John Wiggs had handed him a CD with the truss design engineering already on the CD, which had initially been prepared by Raju Srirama ("Srirama"), which truss design engineering was for the Greenway Project. Srirama, also a former employee of

12/02/2005 11:22 2814887199 AJM FRAMERS, INC. PAGE 09/48
From: Sandra To: Alexander MacKinnon Date: 12/5/2005 Time: 2:33:08 PM Page 8 of 49

Trussway, according to Yin, prepared the initial truss design drawings for the benefit of AJM but for whatever reason became concerned and refused to do more work on the Greenway Project. Eventually Yin agreed to cooperate in the investigation, and provided an affidavit explaining the transfer of Trussway MiTek engineering and truss placement plans which originated with Srirama and ended with AJM's use of Trussway's placement plans for the purpose of erecting the Project. Yin has since given Trussway a copy of the CD which showed the MiTek software and other Trussway intellectual property, including plans with Trussway's name on such plans.

16. Next, Mr. Frey called Mr. Srirama on several occasions to arrange a meeting to discuss his relationship with John Wiggs and AJM, the circumstances under which he utilized the Trussway licensed software programs which were apparently left on his laptop computer, and suggested that he should simply tell the truth about what happened. Frey described his concerns and belief that Srirama had misused Trussway's design software for the purpose of assisting John Wiggs and AJM; and Mr. Srirama did not deny that he had done precisely what Frey accused him of doing. Instead, Srirama called back and said that he had decided that he needed a lawyer. The only subsequent discussions with Srirama involved his follow up telephone calls indicating that he is still trying to find the right lawyer to assist him in this matter.

17. As a result of Trussway's inability to obtain further information on its own, Trussway requested that Kent Pagel, Trussway's attorney for matters of this nature, who is very familiar with the engineering issues and serves as general counsel to the Wood Truss Counsel of America (the association for wood truss manufacturers of which every significant truss manufacturer is a member) contact Chris Newhouse ("Newhouse"), an engineer who the Engineers of Record (SCA Consulting Engineers)

7

indicated was involved as the engineer who "sealed" the individual truss design drawings and the truss placement plans for the Greenway Project.

18. Mr. Pagel did follow up by calling Newhouse, and received the following information from Newhouse as summarized in Mr. Pagel's affidavit:

> Newhouse stated that he did not prepare the truss design drawings for the Greenway Project, but merely sealed drawings already prepared by Srirama. Newhouse indicated that he had been asked "after the fact" to issue a letter opining that the Eagle Metal truss connector plates that American Truss Systems ("American Truss") had substituted for the MiTek plates called for in the sealed truss design drawings, were sufficient. Newhouse indicated that he was able to quickly issue such a letter because:  he relied on the fact that Trussway engineering requirements always add an extra 15% safety factor; he knew that the truss design drawings for the Greenway Project had been based on Trussway engineering by Srirama; and he believed that the Eagle Metal plates which American Truss substituted on the Project were in general only 7% less effective than MiTek plates.  He concluded that the Eagle Metal plates in this "limited instance" were acceptable, "after the fact" substitutes even though they provided less value than specified in the approved truss design drawings.
>
> Newhouse further indicated that he had learned that American Truss had also substituted Truswal Systems Corporation ("Truswal") plates for MiTek plates on many of the trusses delivered to the Project, but that he was not certain of which trusses or the extent of the substitution.  He stated that he did not know the plate values for Truswal or how they compared with MiTek, but that he had been asked to issue a letter similar to the letter written concerning the Eagle Metal plates opining that the Truswal plates were adequate substitutes.  As of that time, Newhouse had not yet made a determination of the various values associated with Truswal plates or the circumstances and conditions under which they might be substituted for MiTek plates.  (Pagel Affidavit, Exhibit "C", Paragraphs 5 and 6)

19.   As a result of this investigation, Trussway instructed its attorneys to draft and send to AJM, attention Joe MacKinnon ("MacKinnon"), President, the demand letter attached hereto as Exhibit "D", dated November 30, 2005. In response to the demand letter, MacKinnon called Frey of Trussway, but generally stonewalled, delayed answering any questions substantively, and simply said that "Trussway needed to do

8

12/02/2005  11:22  28148871  AJM FRAMERS, INC.  PAGE  11/48
From: Sandra  To: Alexander MacKinnon  Date: 12/5/2005 Time: 2:33:08 PM  Page 10 of 48

Case 4:06-cv-00219  Document 1-2  Filed in TXSD on 01/19/06  Page 9 of 48

what it needed to do" but that MacKinnon would contact Trussway at some future point, no specific promise as to a time frame or otherwise.

20.    MacKinnon did not send any response until December 2, 2005, a copy of such letter being attached hereto as Exhibit "E". MacKinnon's letter did not deny using Trussway's placement plans, nor did it promise to cease misusing Trussway's intellectual property or even the Trussway truss placement plans with Trussway's name on them. MacKinnon's letter generally denies knowledge of the claims and attempts to shift the blame to Newhouse and others. Interestingly, MacKinnon refuses Trussway access to the information requested and states that if the information is "relevant, it is suggested that it needs to go through the proper channels of discovery." (MacKinnon Letter, December 2, 2005, Exhibit "E"). Therefore, Trussway's decision to file suit and to pursue injunctive relief and expedited "discovery" is not only necessary, but actually follows the advice of MacKinnon of AJM.

21.    As a further inducement to a prompt and thorough investigation of this matter, Trussway has a reputation for delivering quality designed and engineered trusses, with fabrication and delivery in conformance with that engineering, especially when such engineering has been submitted for and received approval. While substitutions can be made under certain circumstances, an engineer must re-run the engineering to determine if the substitute plate is adequate for the design; and someone must accurately size the plates since not all substitute plates are the same size or hold the same values. Based on Newhouse's own statements, that did not happen; and his "after the fact letter" approving the Eagle Metal plates, but not the Truswal plates, as substitutes, was allegedly based on Trussway's extra 15% design criteria. Neither Trussway nor MiTek authorized such a misuse of their respective intellectual property.

9

22.    Moreover, the continued misuse of Trussway's engineering and software by AJM causes risk to Trussway which cannot be predicted until long in the future when claims could be made that Trussway was somehow involved in the Greenway Project. The fact that AJM is erecting trusses on the Greenway Project which trusses do not identify their manufacturer, combined with existence of truss placement plans at the Greenway Project which clearly indicate that AJM is erecting trusses for this project based on Trussway design/engineering, further exacerbated by the individual truss engineered out sheets being based on MiTek software licensed to Trussway and misused by former Trussway employees for the benefit of AJM — all of this suggests a need for immediate inspections of the Project and an expedited effort to determine whether the engineering and design are correct, whether the substitution of MiTek plates with off brand plates calls into question the structural integrity of the Greenway Project, and to fully document how this happened for the benefit of Trussway as well as improving public safety.

23.    Trussway and perhaps others will be irreparably harmed if this cannot be accomplished; and after the Greenway Project is closed-up with sheetrock, etc. it will be nearly impossible to inspect each of the trusses without considerable additional costs. Now is the time to move quickly to address this issue, as it is not a matter of simply recovering damages at a later date.   Trussway wishes to preserve and protect its engineering and its reputation, which reputation will be irreparably harmed if AJM is allowed to continue using Trussway's misappropriated proprietary intellectual property, and worse, continue MISUSING Trussway's intellectual property.

## CAUSES OF ACTION

24.    All conditions precedent to bringing this suit have occurred.

### Count 1 – Trademark Infringement Under the Lanham Act

25.    Defendant's unauthorized use of the name and mark "Trussway" on its truss placement plans, combined with other internal data showing a misuse of Trussways engineering criteria, falsely indicates to consumers that defendant's products and/or services originate from, are approved by, are sponsored by, are licensed by, or are affiliated with Trussway or are otherwise associated with Plaintiff's products and/or services.  Based on the information obtained to date, AJM's MISUSE of Trussway's engineering, combined with the use of Trussway's name, is likely to cause harm to Trussway's reputation.

26.    AJM's actions, as set forth above, constitute trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114.  As such, Trussway is entitled to treble damages, as well as an award of attorney fees under 15 U.S.C. § 1117(a), as well as infringement upon the business reputation, trade name or trade mark of Trussway, in violation of Section 16.29 of the Texas Business and Commerce Code, and Texas common law.

### Count 2 – Unfair Competition by Misappropriation

27.    AJM's unauthorized use of the name and mark "Trussway" unjustly enriches AJM at the expense of Trussway's reputation and goodwill, while at the same time endangering the public health and welfare, and creating the risk of future suit against Trussway, should any of AJM's misused products and services result in injuries to persons or property.

28. Unless AJM's unlawful acts are restrained by the Court, they will continue causing irreparable injury to Trussway and to the public, for which there is no adequate remedy at law.

### Count 3 – Trade-Secret/Proprietary Property Misappropriation

29. Trussway owns the intellectual property and other proprietary information as set forth above, including among other things: computer programs and software with licenses to Trussway, product designs and manufacturing information, and technical information and drawings, which have been misused by former employees of Trussway for the benefit of AJM. This misappropriation has and is causing irreparable harm to Trussway for which there is not legal remedy. AJM's conduct violates Trussway's license for its engineering software, deprives Trussway or its intellectual property without just compensation, tortiously interferes with Trussway's contractual relations, creates lost profits, good will, and customers for Trussway, and creates a great deal of exposure to potential liability.

### Count 4 – Tortious Interference with an Existing Contract

30. Trussway had a valid written contract with John Wiggs and had employment agreements, implicit and explicit, with the other ex-employees of Trussway which prohibited the misuse of Trussway's intellectual property, including the misuse of its computers, CAD programs, data bases, templates, and, most importantly, its license from MiTek to use the MiTek software. AJM knew of these relationships, and upon information and belief, worked with and encouraged John Wiggs and the other former Trussway employees to breach their agreements and their obligations to Trussway not to misuse Trussway's intellectual property for the benefit of AJM. AJM's own employee, Romero, was utilizing truss placement plans with Trussway's name on them to erect the

12

Project, suggesting that AJM not only knew about the misuse, but blatantly boasted about it.

31.    As such, Trussway is entitled to actual damages as proven at trial, as well as exemplary damages.

### Count 5 – Conversion

32.    As described above, JM has converted the intellectual property of Trussway to the use and benefit of AJM; and despite demands to cease such use, even demands not to misuse such intellectual property by substituting connector plates which are inconsistent with the MiTek engineering software, AJM has refused to cease or to allow Trussway fully inspect the Project and to assist in the determination of the primary parties responsible for this misappropriation and misuse.    AJM has converted Trussway's intellectual property for the benefit of AJM and to the detriment of Trussway.

33.    As such, Trussway is entitled to actual damages as proven at trial, as well as exemplary damages and reasonable and necessary attorney fees.

### APPLICATION FOR TEMPORARY RESTRAINING ORDER AND FOR TEMPORARY INJUNCTION

34.    Trussway's application for a Temporary Restraining Order and for Temporary Injunction is authorized by TEX. CIV. PRAC. & REM. CODE § 65.011(1) & (5) and by Texas Rules of Civil Procedure 680-684. As such, Trussway asks this court to provide the following injunctive relief:

    a.  Order that AJM and anyone under the control of AJM not destroy any documents, including but not limited to electronic versions of documents, which relate to the Greenway Project and the truss designs, truss placement plans, or communications with individuals who were involved with the truss designs and/or the truss placement plans;

13

b,  Order that AJM immediately cease using any truss placement plans which are based in any manner on Trussway's software or engineering, especially not using any placement plans which include Trussway's name on such plans;

c.      Order that AJM cease procuring, building or erecting any trusses or other improvements on the Greenway Project which in any manner utilize MiTek's licensed software to Trussway, or Trussway's engineering related to same;

d.      Order that AJM turn over copies of the relevant documents (i.e. all truss placement plans, both sealed with American Truss's name and those with Trussway's name, as well as all engineered drawings of any kind related to the engineering of trusses on this Greenway Project); and

e.      Order that AJM permit Trussway to inspect all trusses on the Greenway Project (with AJM's participation in such inspection if they so desire) to determine which manufactured plates were used on which trusses, which sizes were substituted for the specified MiTek plates, and which trusses were installed either using the truss placement plans which include Trussway's name on such plans and/or which trusses were installed utilizing truss placement plans which were based in any manner on Trussway's software or engineering parameters.

35.   · Plaintiff Trussway is entitled to the relief demanded and all or part of the relief requires the restraint of some act prejudicial to it.  Further, if AJM's actions persist, Trussway faces further irreparable injury, irrespective of any remedy at law.

36.     It is probable that Trussway will recover from JM after trial on the merits because AJM has no right to the use of Trussway's name, proprietary software or other intellectual property.

37.     Trussway will be irreparably harmed by the unauthorized use of its engineering and design software, some of which is based on a very strict license from MiTek to Trussway which prohibits such use of the software.  Moreover, the MiTek license to Trussway and well established engineering criteria prohibit the substitution of connector plates by alternative manufacturers when the engineering is based on MiTek software utilizing MiTek connector plates, unless such trusses are re-engineered to

14

make the design conform to the fabrication and vice versa. Trussway needs to promptly receive copies of the relevant drawings and to inspect the Greenway Project to determine the identity of the manufacturer and the size and placement of the connector plates on the various trusses erected on the Greenway Project by AJM. Any delay may make it much more difficult and expensive to inspect such trusses because these buildings are typically covered with sheetrock very soon after erection.

38.    Thus, a quick inspection is imperative, and will not cause any harm to AJM or anyone else, unless an ultimate determination is made that the trusses as built with the substitute connector plates are impermissible according to well established engineering criteria, at which point the parties, the engineers of record, may hopefully come to a reasonable agreement/resolution; and if not, the parties will be able to supply the Court with the information necessary to make such a decision.

39.    Covering up these trusses without a full and detailed inspection could leave latent risk on Trussway as well as others, and this entire fiasco may well damage Trussway's reputation, goodwill, and other damages generally related to the misappropriation of its trade names and secrets.

40.    The harm that will result if the temporary injunction is not issued is irreparable and there is not adequate remedy at law, as the loss of goodwill and creation of potential future liabilities associated with AJM's misappropriation and misuse of Trussway's intellectual property may to a large extent remain unknown until the harm occurs. This can be easily prevented by acting quickly to determine the amount and the nature of the misappropriation and of the misuse of Trussway's design and engineering, and comparing same with the trusses as fabricated and installed at the Greenway Project.

15.

41.     No harm to AJM should occur from this Temporary Restraining Order, and, in fact, fully documenting and correcting any truss design/fabrication/installation problems before they occur will ultimately inure to the benefit of AJM. Nonetheless, Trussway is willing to post a reasonable bond as may be set by this Court.

## REQUEST FOR TEMPORARY INJUNCTION

42.     Trussway asks this Court to set its Application for Temporary Injunction for hearing and after hearing the Application, to issue a Temporary Injunction against AJM consistent with the relief requested in the Temporary Restraining Order, as may be adjusted to address issues discovered prior to such hearing on the Temporary Injunction.

## REQUEST FOR PERMANENT INJUNCTION

43.     Trussway asks this Court to set its request for Permanent Injunction for a full trial and, after the trial, to issue a Permanent Injunction against AJM as may be appropriate at the time of the trial

## REQUEST FOR EXPEDITED DISCOVERY

44.     Because time is of the essence, Trussway further requests that this court issue an order that will expedite the discovery process by mandating that AJM turn over copies of the relevant documents, cooperate with plaintiff to inspect the relevant products and structures, and also refrain from destroying any relevant documents.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Trussway prays that this court:

a.      set a date and time for a hearing on entry of a Temporary Injunction;

16

b.    set a date and time for a full trial on entry of a Permanent Injunction;

c.    issue an order expediting the discovery process;

d.    award judgment for actual damages as proven at trial;

e.    award exemplary damages

f.    award judgment for prejudgment interest as allowed by law;

g.    award recovery of reasonable and necessary attorney fees;

h.    award post-judgment interest on any judgment that might be entered; and

i.    for all other relief to which Plaintiff Trussway may be entitled.

Respectfully submitted,

PAGEL, DAVIS & HILL, P.C.

Marlyn B. Hill
State Bar No: 09647460
Michael A. Harris
State Bar No. 24046030
1415 Louisiana, 22nd Floor
Houston, Texas 77002
Telephone:   713-951-0160
Facsimile:    713-951-0662

**ATTORNEY FOR PLAINTIFF
TRUSSWAY LTD.**

S:\PDH Files\Active\TRUSL.1\TRUSL.1L-Litigation\Wiggs Litig\DRA\PI.DOC\POP20051205(2).doc

17

12/02/2005   11:22   2814887199                    AJM FRAMERS, INC.                    PAGE   20/48
From: Sandra   To: Alexander MacKinnon                Date: 12/5/2005 Time: 2:33:08 PM                Page 19 of 48

## VERIFICATION

BEFORE ME, the undersigned authority, on this day personally appeared Greg Frey, Operations Manager for Trussway, Houston Division, known to me to be the person whose name is subscribed to this instrument, and after being duly sworn stated upon his/her oath he/she has read the above and foregoing "Plaintiffs' Original Petition and Application for Temporary Injunction" and that the statements set forth therein are true and correct and within his/her personal knowledge.



Greg Frey

SUBSCRIBED AND SWORN TO BEFORE ME on this 5th day of December 2005, to certify which witness my hand and seal of office.

Notary Public in and for
The State of Texas

SANDRA TREVINO
MY COMMISSION EXPIRES
February 10, 2009

18

Case 4:06-cv-00219   Document 1-2   Filed in TXSD on 01/19/06   Page 19 of 48

12/02/2005  11:22   2814987199          AJM FRAMERS, INC.                    PAGE  21/48
From: Sandra  To: Alexander MacKinnon   )      Date: 12/5/2005  Time: 2:33:08 PM   )    Page 20 of 49

NO: _____

| | | |
|---|---|---|
| TRUSSWAY, LTD. | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | |
| VS. | § | _____JUDICIAL DISTRICT |
| | § | |
| AJM FRAMERS, INC. | § | |
| | § | |
| Defendant. | § | HARRIS COUNTY, TEXAS |

### AFFIDAVIT OF GREG FREY

STATE OF TEXAS          §
                        §
COUNTY OF HARRIS        §

On this day, Greg Frey appeared before me, the undersigned notary public, who upon his oath stated the following:

1.    "My name is Greg Frey. I am more than 21 years of age, of sound mind, and capable of making this affidavit. I have personal knowledge of the facts stated herein and do swear that they are true and correct.

2.    I am a resident of Harris County, Texas.

3.    I am and have been for the last 2 1/2 years employed by Trussway, Ltd. ("Trussway") as the Operations Manager for the Houston Division.  In that capacity I've been involved with overseeing truss sales and management of employees, including numerous job site visits and dealing directly with customers.

4.    In the spring of 2005 Trussway received a request to bid the design, engineering, fabrication and supply of trusses required by the construction of a new

1



apartment complex known as the Estates at Greenway Apartments (the "Greenway Project"). As was typical of this general contractor, Morgan Construction Company ("Morgan") requested that Trussway submit a bid directly to Morgan and a copy to its framing contractor for this project, AJM Framers, Inc. ("AJM"). As is the case for all of Morgan's projects, AJM was to purchase the trusses directly from Trussway and then selling on a turn-key basis the trusses, framing labor and other building materials to Morgan for the Greenway Project. Trussway did so and was initially given indications that Trussway was awarded the truss and component business for the Greenway Project. Trussway's bid for the trusses and components for the Greenway Project totaled a high six figure amount.

5.      Unrelated to this Greenway Project, however, AJM and Trussway were involved in a contract dispute concerning a different project in California over the amount of a bid to AJM; and when Trussway refused to lower the bid as much as Joe MacKinnon, President of AJM desired, the relationship between AJM and Trussway became tense, at best. Shortly thereafter, Trussway learned that AJM would not purchase the design, engineering, fabrication and supply of trusses for the Greenway Project from Trussway and another project called Alexan 288.

6.      At the time of the bid to supply engineering and fabricated trusses to Morgan/AJM, Chris Wiggs was employed by Trussway as a salesman, and Chih Wei Yin ("Yin") was employed by Trussway as a truss designer working with and under other designers and engineers. As a truss designer, Yin utilized Trussway's licensed copies of CAD software for preparing truss layout plans and a licensed copy of MiTek, Inc. ("MiTek")

2

12/02/2005   11:22      2814887199          AJM FRAMERS, INC.                                    PAGE   23/48
From: Sandra   To: Alexander MacKinnon        )        Date: 12/5/2005  Time: 2:33:08 PM      )           Page 22 of 49

truss design software which allows the designers/engineers to engineer each individual truss. During the period August, September, and early October, 2005, Chris Wiggs, and Yin voluntarily resigned from Trussway's employment. Raju Srirama had been employed by Trussway in the same capacity as Yin and had left the company approximately 1 ½ years earlier.

7.      MiTek is one of the predominant truss plate manufacturers in the United States. Truss plates are pressed into the joints where various wood components connect, such metal plates being pressed into the wood with teeth which hold the wood in place and which plates provide other values essential to the strength and safety of the fabricated wood truss. Because of its desire to sell MiTek metal plates to the truss industry, MiTek also allows its authorized truss fabricators under a separate license to utilize the MiTek truss design software under the strict controls placed by MiTek. Also, over many years Trussway has developed certain parameters and assumptions, including safety factors, etc. which makes its truss designs consistent and to the quality standards required by Trussway.

8.      Also relevant to the issue of truss design, Trussway has acquired by license CAD software which it allows its designers and engineers to use for the purpose of providing a layout of the trusses for a particular project (i.e. these are typically called the "truss layout" or "truss placement plans"), and it is also an essential part of the overall design/engineering of any particular project. Fabrication and supply of the trusses refers to the process of actually building the trusses in a truss plant through placing the wood components specified in the design in the designed pattern, and connected with the

3

connector plates of the type and size specified in the approved truss design drawings.

   9.  As part of my job at Trussway, I often visit various construction sites to contact customers, potential customers and others in the industry.   On November 14, 2005 I visited the Greenway Project and to my shock I saw truss placement plans with Trussway's name on those plans, even though I knew that AJM had not contracted with Trussway to provide either truss design drawings, truss placement plans or the trusses themselves.  I returned to the jobsite on November 16, 2005 and noticed that the trusses were being delivered by a common carrier as opposed to a truss company's own trucks and that the trusses were unmarked (i.e. not identified by manufacturer as does Trussway). I also noticed that truss plates affixed to the trusses that I inspected were not MiTek, because MiTek plates are stamped with Mitek's name identifying such plates as MiTek. I also know that Trussway uses MiTek plates exclusively and that Trussway truss engineering is based on MiTek software and use of MiTek plates.  Thus, I began to suspect that someone had taken Trussway engineering which was based on MiTek software and the use of MiTek connector plates for the purposes of the design; yet they were apparently substituting an off-brand plate.  I'm not an engineer, but I knew that this could cause serious problems.

   10.  I was also very upset to learn that the truss placement plans had Trussway's name on them, which suggested to me that someone had used Trussway engineering software (both the MiTek Engineering and the AutoCad Placement Plan Software) without authorization, in violation of Trussway's various license agreements, and with potential exposure to Trussway should the Greenway Project ever fail to perform as specified.  I

4

noticed that the truss placement plans also had the initials "J.W." on them, as in "John Wiggs", yet I also knew that John Wiggs was not, himself, capable of operating the computerized software – even if he had a license, which he does not – necessary to generate such placement plans.

11. In my follow-up visit on November 16, 2005, I tried to obtain more information from AJM's management, but the only person who would talk to me was AJM's employee, Romero, who confirmed that AJM was framing and erecting the Greenway Project based on the Trussway Placement Plans that he showed me. He also allowed me to take a photograph of such Trussway Placement Plans, a true and correct copy of which is attached to this Affidavit as Exhibit "A-1". I tried to get a copy of the truss design drawings on each of the individual trusses for the Greenway Project as specified on the Trussway Placement Plans, but Romero indicated that he did not have copies.

12. I then contacted Yin, who left Trussway's employment on or about October 20, 2006, as I suspected he may have assisted in the preparation of some of the truss design and engineering on the Greenway Project. I knew this in part because I had previously learned that Yin had retained a copy of either or both the MiTek software or the CAD software on his laptop computer when he resigned from Trussway, so we had recently recovered the laptop through demanding that Yin return it to Trussway. Upon calling Yin regarding this new matter he advised that John Wiggs had handed him a CD with the truss design engineering already on the CD, which had initially been prepared by Raju Srirama, which truss design engineering was for AJM's Greenway Project. According to Yin, Mr. Srirama prepared the initial truss design drawings for the benefit of AJM but for

5

12/02/2005  11:22    2814887199    AJM FRAMERS, INC.    PAGE  26/48

Date: 12/6/2005 Time: 2:33:08 PM    Page 25 of 49

From: Sandra  To: Alexander MacKinnon

whatever reason became concerned and refused to do more work on the Greenway Project. I followed this up with several more conversations with Yin, and Trussway later obtained a signed affidavit from Yin to which he attached a copy of the CD that John Wiggs handed to him, which contained the information that had been prepared by Mr. Srirama.

13.    Trussway has the copy of that CD which is referenced in Yin's affidavit, and we have reviewed the truss design engineering and truss placement plans, and in numerous places Trussway's name is prominently displayed. We have maintained that copy of the CD in a safe place at Trussway and it is available for inspection by any party in interest, the Court, etc.

14.    I also called Mr. Srirama on several occasions to arrange a meeting to discuss his relationship with John Wiggs and AJM, the circumstances under which he would utilize the Trussway licensed software programs which were apparently left on his laptop computer, and suggesting that he should simply tell us the truth about what happened. I described my concerns and belief that he had misused Trussway's design software for the purpose of assisting John Wiggs and AJM, and Mr. Srirama did not deny that he had done what I indicated that I believed he had done. Instead, he called back and said that he had decided that he needed a lawyer. I did not disagree, I simply asked that after he talked to the lawyer that he promptly contact me to consider "coming clean" so that we all knew what we were dealing with. He was evasive, but generally said that he would get back to me after he talked to a lawyer. Since then we have not discussed this matter.

15.    Based on other information obtained through discussions with Ralph Crane, an engineer with SCA Consulting Engineers, the engineers of record on the Greenway

8

From: Sandra   To: Alexander MacKinnon   Date: 12/5/2005 Time: 2:33:08 PM   )

Project, as well as information obtained from Chris Newhouse, P.E., I am very concerned that the Greenway Project is being fabricated and installed based on Trussway software and engineering proprietary to Trussway and/or under strict license to Trussway; I am more concerned that former Trussway employees misused Trussway's proprietary truss design engineering to provide drawings and engineered cut sheets to the Greenway Project; yet such Greenway Project is being fabricated with non-MiTek connector plates (namely Truswal Systems Corporation and Eagle Metal plates), which do not have the same design values as MiTek.

16.   As a result, I requested that Trussway's attorneys immediately obtain information which can determine the nature and extent of the misuse of Trussway's truss design engineering, the substitution of Eagle and Truswal connector plates for the MiTek connector plates as specified in the approved drawings, and to be assured that such misuse of Trussway's proprietary software, combined with plate substitutions, etc. would not create potential future losses. For example, having Trussway Placement Plans on the Greenway Project could many years from now cause someone who is injured by a collapsed building, etc. to claim that Trussway was somehow involved in the design/engineering of the Greenway Project, causing Trussway unknown liabilities.

17.   I've tried to obtain better explanations as to what happened and as to the current status of this Greenway Project and of the extent and nature of the misuse of Trussway's name and software, design/engineering, but I have been unable to obtain much of the information necessary to fully evaluate this situation. Therefore, I requested that Trussway's lawyers initiate direct contact with AJM, which is the company utilizing

7

of the Greenway Project, and to fully document how this happened for the benefit of Trussway as well as improving public safety. Trussway and perhaps others will be irreparably harmed if this cannot be accomplished; and after the Greenway Project is closed up with sheetrock, etc. It will be nearly impossible to inspect each of the trusses without considerable additional costs. Now is the time to move quickly to address this issue, as it is not a matter of simply recovering damages at a later date. Trussway wishes to preserve and protect its engineering and its reputation, which reputation will be irreparably harmed if AJM is allowed to continue using Trussway's misappropriated proprietary intellectual property.

Further Affiant saith not."

GREG FREY

SWORN TO and SUBSCRIBED before me by GREG FREY on the _5_ day of December, 2005.

Notary Public in and for the State of Texas

ALICE H. CISNEROS
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
DEC. 19, 2009

9

From: Sandra   To: Alexander MacKinnon

Date: 12/5/2005  Time: 2:33:08 PM





EXHIBIT
"A-1"

Case 4:06-cv-00219   Document 1-2   Filed in TXSD on 01/19/06   Page 28 of 48

PAGE  30/48
Page 28 of 48

12/02/2005  11:22    2814887189
AJM FRAMERS, INC.

From: Sandra   To: Alexander MacKinnon

Date: 12/6/2005 Time: 2:33:06 PM



AJM FRAMERS, INC.

Date: 12/5/2006 Time: 2:33:08 PM

From: Sandra   To: Alexander MacKinnon



## AFFIDAVIT OF CHIH WEI YIN

STATE OF TEXAS          §
                        §
COUNTY OF HARRIS        §

On this day, CHIH WEI YIN appeared before me, the undersigned notary public, who upon his oath stated the following:

1.      "My name is Chih Wei Yin.  I am more than 21 years of age, of sound mind, and capable of making this affidavit.  I have personal knowledge of the facts stated herein and do swear that they are true and correct.

2.      I am a resident of Cypress, Texas.

3.      I was employed by Trussway, Ltd. ("Trussway") for approximately eight (8) years, and ended my employment on or about October 20, 2005.  At the time I left I was primarily responsible for truss placement and truss designs, working under Greg Grimes.

4.      After my employment with Trussway ended, I was contacted by John Wiggs, Jr.  I had known Mr. Wiggs while working for Trussway as he had been a salesman for Trussway for years.  When Mr. Wiggs contacted me he was not working for Trussway.  At the time Mr. Wiggs was either working for himself or for a company that he referred to as either "Construction Resource Services" or "CRS".

5.      I met with Mr. Wiggs and he advised me that he was involved in the Estates of Greenway project being built for Morgan Construction Company, a Houston, Texas general contractor.  Mr. Wiggs was involved in securing truss placement plans and individual truss designs as well as seeing to it that the trusses were manufactured for this

1



EXHIBIT
"B"

particular project by a local truss fabricator.  At that time Mr. Wiggs provided me with a CD that contained a number of drawings as I will describe further in this Affidavit.  Mr. Wiggs furthermore asked me to maintain the truss placement plans and determine any need for changes to individual truss designs based on activity occurring at the project.  We did not discuss how much I would be paid for this work, but it was clearly understood that Mr. Wiggs would pay me an agreed upon sum for the work that I would do.

6.       The CD that Mr. Wiggs provided me contained the following:  (a) working truss placement plan drawings in a digital format that could be opened up and modified or changed through the use of Autocad licensed software; (b) PDF copies of truss placement plans; (c) TRE versions of individual truss designs that could be opened up and modified or changes through the use of Mitek licensed software; and (d) PDF copies of individual truss design drawings also referred to as truss cut sheets.  I have copied the CD that Mr. Wiggs provided to me and have attached a copy to this Affidavit.

7.       Mr. Wiggs informed me that Raju Srirama, who I knew as a former employee of Trussway, had been the person who prepared the truss placement plans and truss design drawings for him for this project, but that Mr. Srirama had declined to do any more work for Mr. Wiggs concerning this project.  Mr. Srirama had prepared the truss placement plans and truss design drawings while he was employed by Universal Forest Products, a national company who has a truss fabrication plant located in the Houston, Texas area.  I learned that Mr. Srirama had prepared the truss placement plans and truss design drawings in the August and September, 2005 timeframe ~~at Mr. Wiggs request and directly~~ ~~for Mr. Wiggs.~~ I DO NOT KNOW IF THE WORK WAS DONE @ THE REQUEST OF MR. WIGGS OR DIRECTLY FOR MR. WIGGS.

2

Chris Newhouse to be a licensed Texas professional engineer who was previously employed by Trussway.  I know Jack Dermer to be an employee and owner of American

Truss, who I understand to be the truss fabricator for Mr. Wiggs on the Estates of Greenway project.

11.    All truss designs were prepared by either Raju Srirama or Chris Newhouse, P.E. using Mitek software and such truss designs depict the use of Mitek metal connectors to be used in the manufacturing of such trusses. I understand that the individual truss design drawings prepared on Mitek software and depicting the use of Mitek connector plates have been submitted to SCA Engineers for review and approval. SCA Engineers is the engineer of record for the Estates of Greenway project.

12. Since asking me to work on the Estates of Greenway project, John Wiggs has

3

12/02/2005 11:22 2814BB71                    AJM FRAMERS, INC.                    PAGE 34/48
                                                                                  Page 34 of 49

From: Sandra   To: Alexander MacKinnon                    Date: 12/5/2005 Time: 2:33:08 PM

asked me to prepare the truss placement plans and individual truss designs for a project

he is involved with referred to as the Alexan at 288 project.

Further Affiant saith not."

                                                            CHIH WEI YIN

SWORN TO and SUBSCRIBED before me by CHIH WEI YIN on the 22nd day of
November, 2005.

                                                Notary Public in and for the State of Texas

4

1.      "My name is Kent J. Pagel. I am more than 21 years of age, of sound mind,

and capable of making this affidavit. I have personal knowledge of the facts stated herein.

and do swear that they are true and correct.

2.  I am a resident of The Woodlands, Texas and office in Houston, Texas.

3.  I am employed by the law firm of Pagel, Davis & Hill, P.C. ("PDH"). Martyn B. Hill, a shareholder in PDH, serves as the attorney of record on behalf of Trussway, Ltd. ("Trussway") in the above-referenced case.

4.  In the course of investigating Trussway's claims against AJM Framers, Inc. and perhaps other persons and entities, on November 29, 2005 I placed a telephone call to Chris Newhouse, P.E. ("Newhouse").  Newhouse was a former truss design engineer employed by Trussway.

1



5.  Newhouse stated that he did not prepare the truss design drawings for the Estates at Greenway Apartments project (the "Project"), but merely sealed drawings already prepared by Raju Srirama, a former employee of Trussway. Newhouse indicated that he had been asked "after the fact" to issue a letter opining that the Eagle Metal truss connector plates that American Truss Systems ("American Truss") had substituted for the MiTek, Inc. ("MiTek") plates called for in the sealed truss design drawings, were sufficient. Newhouse indicated that he was able to quickly issue such a letter because: he relied on the fact that Trussway engineering requirements always add an extra 15% safety factor; he knew that the truss design drawings for the Project had been based on Trussway engineering by Mr. Srirama; and he believed that the Eagle Metal plates which American Truss substituted on the Project were in general only 7% less effective than MiTek plates. He concluded that the Eagle plates in this "limited instance" were acceptable, "after the fact" substitutes even though they provided less value than specified in the approved truss design drawings.

6.  Newhouse further indicated that he had learned that American Truss had also substituted Truswal Systems Corporation ("Truswal") plates for MiTek plates on many of the trusses delivered to the Project, but that he was not certain of which trusses or the extent of the substitution. He stated that he did not know the plate values for Truswal or how they compared with MiTek, but that he had been asked to issue a letter similar to the letter written concerning the Eagle Metal plates opining that the Truswal plates were adequate substitutes. As of that time, Newhouse had not yet made a determination of the various values associated with Truswal plates or the circumstances and conditions under

2

12/02/2005 11:22  28148871
From: Sandra  To: Alexander MacKinnon

AJM FRAMERS, INC.
Date: 12/5/2005 Time: 2:33:08 PM

PAGE 37 of 49
Page 37 of 49

which they might be substituted for MITek plates.

7.  Newhouse further stated that the truss design drawings he sealed for the Project did not contain the name of any truss fabricator stated on them.  He indicated however that when he sealed the truss design drawings he knew the trusses were going to be fabricated by American Truss Systems, who he knew neither a licensed Mitek software user nor a Mitek customer who would have the ability to purchase Mitek connector plates for the use in manufacturing trusses.  Newhouse also indicated that he sealed the truss placement plans for the Project and that the truss placement plans contained the name American Truss Systems on the face of such plans.

Further Affiant saith not."

_____
KENT J. PAGEL

SWORN TO and SUBSCRIBED before me by KENT J. PAGEL on the 5th day of December, 2005.

_____
Notary Public in and for the State of Texas


SANDRA TREVINO
MY COMMISSION EXPIRES
February 10, 2009

3

Case 4:06-cv-00219   Document 1-2   Filed in TXSD on 01/19/06   Page 37 of 48

12/02/2005  11:22    2814887179    AJM FRAMERS, INC.                PAGE  37/48
From: Sandra  To: Alexander MacKinnon                   Date: 12/5/2005 Time: 2:33:08 PM        Page 38 of 48

# PAGEL, DAVIS & HILL, P.C.

*Business Lawyers First*

Marlyn B. Hill, Shareholder
E-Mail: mbh@pdhlaw.com

1415 Louisiana
22nd Floor
Houston, Texas 77002

Phone: (713)-651-0160
Fax: (713)-651-0662

Website: www.pdhlaw.com

November 30, 2005

Mr. Alexander Joseph MacKinnon
President & Registered Agent
AJM Framers, Inc.
16650 Diana Lane #102
Houston, Texas 77058

**Via Facsimile: 281/488-7199**

Telephone: 281/488-4449

RE:   Estates at Greenway Apartments Project,
      3660 Richmond Ave, Houston, Texas (the "Project")

Dear Mr. MacKinnon:

Please be advised that this firm represents Trussway, Ltd ("Trussway"). As you may be aware, Trussway has some very serious concerns regarding the Project.

More specifically, Trussway does not have a contract with AJM Framers, Inc. ("AJM") regarding the Project and Trussway has not billed, nor has it been paid for, any work related to the Project. Nonetheless, and completely unknown to Trussway until very recently, AJM appears to have convinced one or more ex-Trussway employees to provide engineering and truss placement plans to the Project on behalf of AJM based on software licensed to Trussway and based on Trussway's engineering parameters which are entirely proprietary to Trussway. This conduct violates Trussway's license for MiTek engineering software, deprives Trussway of its intellectual property without compensation, and constitutes tortious interference with Trussway's implicit and explicit contractual relations with its former employees.

Worse yet, AJM's wrongful conduct also creates potential liability for Trussway, MiTek, and for all of those involved in the Project. Specifically, Trussway has learned and documented that the Truss Placement Plans at the Project site utilized by AJM include the prominently displayed name, "Trussway." Upon information and belief, the Engineer of Record (SCA) has suggested that Chris Newhouse, P.E. sealed a different set of Placement Plans, whereby someone removed Trussway's name from the Placement Plans and replaced it with the name, American Truss. Because people



EXHIBIT
"D"

12/02/2005  11:22   28148871
From: Sandra   To: Alexander MacKinnon

AJM FRAMERS, INC.
Date: 12/5/2005  Time: 2:33:08 PM

PAGE  38/48
Page 39 of 49

Mr. MacKinnon
November 30, 2005
Page 2

Involved with the Project have refused to provide us with all relevant materials (perhaps at your suggestion) we do not currently know if the two versions of the Placement Plans differ only in name and Mr. Newhouse's seal, or whether there are other more substantive differences.

Regardless, we do know that this Project is being framed by use of Placement Plans which include Trussway's name prominently displayed on such plans (we have photos of such Placement Plans). Even if you removed Trussway's name from the Placement Plans and erected the Project based on the sealed, modified Placement Plans under the name American Truss, the Placement Plans were nevertheless created based on the illicit use of Trussway software, prepared by a former employee of Trussway with your knowledge and participation. This has been confirmed by Chih Wei Yin, who has provided an Affidavit acknowledging that Mr. Wiggs (former Trussway employee) provided Mr. Yin (also a former Trussway employee) with a CD loaded with truss placement plans and truss design drawings for the Project prepared by Raju Srirama (also a former Trussway employee).

More telling, Chris Newhouse, P.E., has separately confirmed via a telephone call that he did not prepare the truss design drawings for the Project but merely sealed drawings already prepared by Mr. Srirama. Mr. Newhouse further indicated that he had been asked by AJM/American Truss/Wiggs "after the fact" to issue a letter opining that the Eagle plates that American Truss had substituted for the MiTek plates called for in the sealed truss design drawings were sufficient. Surprisingly, Mr. Newhouse indicated that he was able to quickly issue such a letter because: (i) he relied on the fact that Trussway engineering requirements always add an extra 15% safety factor; (ii) he knew that the truss designs for the Project had been based on Trussway engineering by Mr. Srirama; and (iii) he believed that the Eagle plates which American Truss substituted on the Project were in general only 7% less effective than MiTek plates.  Therefore, he concluded that the Eagle plates in this "limited instance" were acceptable, "after the fact" substitutes -- albeit providing less value to the ultimate customer than specified in the approved truss design drawings.

Mr. Newhouse indicated, however, that he had recently learned that American Truss had also substituted Truswal plates for MiTek plates on many of the trusses delivered to the Project, but that he was not certain of which trusses or the extent of the substitution. He concluded by indicating that he did not know the plate values for Truswal or how they compared with MiTek, but that he had been asked (again, presumably by AJM/American Truss/John Wiggs) to review the available literature and issue a similar letter certifying that the Truswal plates were adequate substitutes.  It is our understanding that Mr. Newhouse has not yet made a determination of the various values associated with Truswal plates or the circumstances and conditions under which they might be substituted for MiTek plates.

Ignoring for the moment Trussway's claim for misuse of its software license and its proprietary engineering, as well as AJM's interference with its contractual relations with former employees (implicit and explicit obligations), Trussway is still left with the distinct possibility that a Project is being built with

S:\POR Files\Activa\TRUSL1\TRUSL1L-Litigation9\Wiggs Ltr\TOR\ANDORGA.IM20051130m9efDemand.doc

Mr. MacKinnon
November 30, 2005
Page 3

substituted truss plates of a value admittedly not equal to MiTek, based on Trussway's proprietary engineering and software license, and with Trussway's name on the very Placement Plans which AJM is using to erect the Project.  If the Project were to collapse many years from now, whether solely due to truss problems or because of a combination of problems, rest assured that ambitious plaintiffs' lawyers would point to the mismatch of approved engineering versus as built trusses, the use of Truss Placement Plans with Trussway's name plastered all over such drawings, and with the involvement of numerous people associated with Trussway, albeit from our perspective not technically employed by Trussway at the time of their conduct.

This combination — perhaps at a time when memories have faded and many business entities have ceased operating — could create a danger to the public and liability to Trussway.  The pitiful amount that AJM saved from this exercise does not justify the exposure to any of those concerned, especially to Trussway who has not received one dime from this Project.

Therefore, we respectfully demand that you promptly address these issues by: (1) certifying that AJM will immediately cease using any Truss Placement Plans which are based in any manner on Trussway's software or engineering, especially not using any Placement Plans which include Trussway's name on such plans; (2) that AJM cease procuring, building or erecting any trusses or other improvements on this Project which in any manner involve MiTek's licensed software or Trussway, or Trussway's engineering related to same; (3) that AJM turn over copies of the relevant documents (i.e. all Truss Placement Plans, both sealed with American Truss's name and those with Trussway's name, as well as all engineered drawings of any kind related to the engineering of trusses on this Project); and (4) that AJM work with Trussway to inspect all trusses on this Project to determine which manufactured plates were used on which trusses, which sizes were substituted for the specified MiTek plates, and which trusses were installed either using the Truss Placement Plans which include Trussway's name on such Plans and/or which trusses were installed utilizing Truss Placement Plans which were based in any manner on Trussway's software or engineering parameters.

Trussway hereby demands that AJM respond by 5:00 pm, Thursday, December 1, 2005, to its willingness to honor the requests set forth in this demand.  The failure to do so will require that Trussway move promptly to seek injunctive relief and all other remedies as may be appropriate under the circumstances.

Trussway hereby reserves all rights, including its right to claim for damages in any manner related to this matter.  Trussway's immediate focus, however, is to prevent any further fabrication and/or installation of trusses on the instant Project via the misuse of Trussway's proprietary rights (including its MiTek software license).  This mis-matching of disjointed engineering, unauthorized substitution of structural products, fabrication contrary to the approved drawings, and erection via purloined intellectual property portends potential liability for all involved.

Because of the exigencies of the matter, I urge you to immediately involve your corporate attorneys so that they can advise you of the seriousness of this situation and work with us to mitigate damages.

G:\PDH Files\Active\TRUSS\41TRUSS.11-Litigation\Wigga Ltd\DRAWOORGA\JMB0051160\IniSntDemand.doc

12/02/2005  11:22    28148871?9                        AJM FRAMERS, INC.                    PAGE    40/48
From: Sandra   To: Alexander MacKinnon                    Date: 12/5/2005  Time: 2:33:08 PM              Page 41 of 49

Mr. MacKinnon
November 30, 2005
Page 4

for all concerned.  Any request for injunctive relief requires that we at least attempt to communicate with opposing parties' counsel, so identification of that counsel is helpful for that purpose as well.  I look forward to receiving a prompt response from your counsel.

Very truly yours,

Martyn B. Hill

S:\PDM Files\Active\TRUSL1\TRUSL1L-Litigation\Mega Ltig\DRA\CORGA.IM2005\1130InitialDemand.doc

12/02/2005  11:22    2814887199    AJM FRAMERS, INC.    PAGE
From: Sandra  To: Alexander MacKinnon         Date: 12/5/2005 Time: 2:33:05 PM    Page 42 of 48

# hp LaserJet 3030

PAGEL,DAVIS & HILL
718-961-0662
Nov-30-2005  5:35PM



## Fax Call Report

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 576 | 11/30/2005 | 5:32:49PM | Send | 2814887199 | 2:25 | 5 | OK |

## PAGEL, DAVIS & HILL, P.C.

## AJM Framers, Inc.

16850 Diana Lane, # N2 • Houston, Texas 77058
(281) 488-4449 • Fax (281) 488-7199

December 2, 2005

Martin B. Hill
Shareholder
Pagel, Davis & Hill, P.C
1415 Louisiana
22nd Floor
Houston, TX 77002

To Whom It May Concern:

Per your letter dated 11-30-05 concerning the truss engineering at the Greenway
Apartments I will respond as follows:

**Paragraph 2**
AJM did not "convince" any of Trussway's ex-employees to provide truss drawings for
the above project. AJM has in fact signed a contract with American Truss, who in turn
may have hired one or more of Trussway's ex-employees to prepare truss drawings.

AJM has under no circumstances been aware of or condoned the use of software
belonging to Trussway. AJM has no knowledge of such software and would have no
reason to be concerned with its origination or ownership.

**Paragraph 3**
AJM has in no way engaged in or been involved with any wrongful conduct. Industry
procedures were maintained without malice or miss-conduct in their selection of
suppliers, furthermore, AJM strongly resents any implications of "wrong doing". AJM
chose not to do business with Trussway because of bad experiences with their service and
credibility.

AJM has no knowledge that Chris Newhouse sealed any drawings that were
inappropriate. AJM's contract is with American Truss whom Trussway has trusted to the
extent of doing business with, therefore any implications involving AJM are strongly
denied. This should be addressed with Chris Newhouse and American Truss.

**EXHIBIT**

"E"

**Paragraph 4**
AJM has no duty to provide a third party with information based solely on their demand. Should this information be relevant, it is suggested that it needs to go through the proper channels of discovery.

AJM had no "after the fact" opinions relating to any phase of the truss engineering process. This allegation should be taken up with the proper entities of this dispute.

**Paragraph 5**
AJM has no familiarity with truss plate values and would not have issued any letter stating different. Once again, this allegation should be taken up with the appropriate entities of this dispute.

**Paragraph 6**
AJM has no knowledge of Trussway's contractual agreements with their former employees.

**Paragraph 7**
AJM, in twenty years has not relied on the opinions of Trussway to make their business decisions, much less the economies of their purchase. Service and reliability are weighed heavily in this decision process. If Trussway deems that they are entitled to compensation for misuse of their product information it should be addressed with the proper entities of this dispute, not AJM.

**Paragraph 8**
AJM will in no way respond to a demand issued by a third party whom they have no contractual ties, furthermore, should any damages occur from false allegations made by Trussway, AJM will seek restitution for all losses they incur to the fullest extent of the law. Once again, these allegations should be addressed with the proper entities of this dispute, not AJM.

It is my opinion that the allegations, miss-information, and finger pointing in your letter is absurd and is not typical of professional management in a reputable company especially in light of this history with the persons involved in this dispute. In doing my due-diligence prior to this reply it is apparent that a "witch hunt" is in progress which AJM has no reason to be apart of.

AJM has maintained the highest ethical standards in doing business for twenty years and would have absolutely no interest or benefit in deviating from those practices for any reason. AJM has a reputation as such and can support this claim by having anyone contact the many customers and suppliers that we have been fortunate enough to work with through the years.

The fact that Trussway has made the decision to include AJM in this matter is beyond explanation and is deeply resented. AJM has very minimal knowledge of engineering or truss manufacturing and should clearly be exempt from this dispute. AJM relies on professional consultants and would make no implications that they are capable of having opinions in the issues stated in this dispute.

I am of the opinion that a telephone call or a meeting would have been much more productive than the way that this was handled especially in light of the relationships that go back for so many years and the credibility and honesty of the people involved. It is clear that this is not one of Trussway's priorities as it has been in the past.

Sincerely,

Jon MacKinnon
President
AJM Framers, Inc.

Co: Chris Raines, Greg Frey

12/02/2005  11:22   2814887199                 AJM FRAMERS, INC.
From: Sandra   To: Alexander MacKinnon              Date: 12/2/2005  Time: 2:33:08 PM          Page 48 of 49

11/29/2005  12:45   2814887199                 AJM FRAMERS, INC.          PAGE   01/04

# AJM Framers, Inc.
16850 Diana Lane, Suite 102
Houston, TX 77058
Phone:   (281) 488-4449
Fax:     (281) 488-7199

**FAX**

| | | | |
|---|---|---|---|
| To: | Martin B. Hill | From: | Joe MacKinnon |
| Fax#: | 713-951-0662 | Pages: | 4 |
| cc: | Chris Reinet, Greg Frey | Date: | 12/2/2005 |

Subject: Estates at Greenway Apartments Project

Comments:

NO: _____

| | | |
|---|---|---|
| TRUSSWAY, LTD. | § | IN THE DISTRICT COURT |
| Plaintiff | § § § | |
| vs. | § § | _____ JUDICIAL DISTRICT |
| AJM FRAMERS, INC. | § § | |
| Defendant. | § § | HARRIS COUNTY, TEXAS |

## TEMPORARY RESTRAINING ORDER AND
## ORDER SETTING HEARING FOR TEMPORARY INJUNCTION

On the ____ day of _____, 2005, the Court heard Plaintiff Trussway Ltd.'s Application for Temporary Restraining Order.

The Court, after examining the pleadings and affidavits, finds there is evidence that the Plaintiff will recover from Defendant for the relief requested and that the harm is imminent if the Court does not issue the Temporary Restraining Order. The requested relief requires the preservation of the status quo and prohibits Defendant, AJM Framers Inc., from further use of Trussway Ltd.'s intellectual property, which AJM Framers Inc. is without right to use, and, therefore, no harm should accrue to AJM Framers Inc. from prohibiting their further use of Trussway Ltd.'s intellectual property.

IT IS THEREFORE ORDERED that Defendant immediately cease using any truss placement plans that are based in any manner on Plaintiff's software or engineering, especially not using any placement plans which include Plaintiff's name on such plans; that Defendant immediately cease procuring, building or erecting any trusses or other improvements on the project known as the Estates at Greenway Apartments, which in any manner utilize MiTek's licensed software to Trussway, or Trussway's engineering related to same; that Defendant and anyone under the control

of Defendant not destroy any documents, including but not limited to electronic versions of documents; which relate to the project known as the Estates at Greenway Apartments and the truss designs, truss placement plans, or communications with individuals who were involved with the truss designs and/or the truss placement plans; that Defendant turn over copies of the relevant documents (i.e. all truss placement plans, both sealed with American Truss's name and those with Plaintiff's name, as well as all engineered drawings of any kind related to the engineering of trusses on the project known as the Estates at Greenway Apartments); that Plaintiff is permitted to inspect all trusses on the Greenway Project (with AJM's participation in such inspection if they so desire) to determine which manufactured plates were used on which trusses, which sizes were substituted for the specified MiTek plates, and which trusses were installed either using the truss placement plans which include Plaintiff's name on such plans and/or which trusses were installed utilizing truss placement plans which were based in any manner on Plaintiff's software or engineering parameters; and finally that Defendant should refrain from altering, modifying, or destroying any relevant files and/or documents, including electronic versions.

IT IS FURTHER ORDERED that the clerk issue notice to Defendant AJM Framers Inc. that the hearing on Plaintiff Trussway Ltd.'s Application for Temporary Injunction is set for the _____ day of _____, 2005 at _____ a.m./p.m.  The purpose of the hearing shall be to determine whether this temporary restraining order should be made a temporary injunction pending a full trial on the merits; and the bond is set at _____ ($_____).

This Order expires on the _____ day of _____, 2005.

_____
Judge Presiding

12/02/2005  11:22    2814887157
From: Sandra   To: Alexander MacKinnon

AJM FRAMERS, INC.
Date: 12/5/2005 Time: 2:33:08 PM

PAGE   48/48
Page 49 of 49

Approved as to Form:
PAGEL, DAVIS & HILL, P.C.


Martyn B. Hill
State Bar No. 09647460
Michael A. Harris
State Bar No. 24046030
1415 Louisiana, 22nd Floor
Houston, Texas 77002
Telephone:   713-951-0160
Facsimile:   713-951-0662
**COUNSEL FOR PLAINTIFF
TRUSSWAY LTD.**